
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | |
|---|---|
| HASAN HUSAIN and LAYLA SOLIZ,<br><br>    *Plaintiffs,*<br><br>v.<br><br>TENNESSEE BOARD OF REGENTS,<br><br>TRUSTEES OF THE UNIVERSITY OF TENNESSEE,<br><br>and<br><br>RANDY BOYD, in his official capacity as the President of the University of Tennessee,<br><br>    *Defendants.* | 3:25-cv-218<br>Crytzer / McCook<br><br><br>Case No.:<br><br>COMPLAINT FOR<br>CIVIL RIGHTS VIOLATIONS<br><br>Jury Trial Demanded |

**INTRODUCTION**

1. Plaintiffs bring this First Amendment challenge to University of Tennessee's ("UT") decision to threaten peaceful demonstrators who developed teach-ins on its campus to enlighten passersby about Gaza's occupation with felony arrests allegedly for remaining on campus after 10 p.m., and then punish demonstrators with arrests and misdemeanor charges, current students with disciplinary proceedings, and community members—including UT alumni— with indefinite expulsion from its campus.

2. The First Amendment does not allow campus officials to establish free- expression-black-out hours of the day, even on occasions that may be emotional or politically polarizing. The Supreme Court has long recognized that "the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 828 (1995). Defendant's decision to arrest nonviolent community members who were not violating any laws to intimidate them against holding a vigil on Nakba Day, violates the

Plaintiff's First Amendment rights to freedom of speech, expression, and to peacefully assemble. The Government has violated these constitutional commands.

3.       Plaintiffs, like many Palestinians and supporters of Palestinian rights, commemorate the Nakba, or the beginning of their displacement, on May 15. The decision to arrest students and nonstudents during a peaceful vigil on Nakba Day censored their protected speech—based on viewpoint, on content, and the identity of the speaker—on a matter of vital public discourse and concern without any legal justification.

4.       Without immediate relief from the court, the university will continue to justify their unlawful censorship of Palestinians by claiming a neutrality that—in light of the May 2024 content-based arrests, the university's financial holdings with Israeli companies, and departmental ties and donations from weapons manufacturers—the institution cannot claim to possess. Declaratory relief is necessary to assure students and members of the community that they will not face arrest for assembling peacefully on the UT campus to commemorate the open wound of ethnic cleansing that began in 1948 and continues to the present day.

## PARTIES

5.       Plaintiffs Layla Soliz and Hasan Husain bring this First Amendment challenge to University of Tennessee's decision to threaten and punish pro-Palestinian demonstrators. Plaintiffs, who both attended the University of Tennessee, are also siblings of Palestinian descent who were both born and raised in Knoxville, where they continue to reside.

6.       Defendant Tennessee Board of Regents ("Board of Regents") is the governing body for all systems of higher education in Tennessee. The University of Tennessee is an instrumentality of the state and a public corporation, the government of which is vested in the Board of Regents. Tenn. Code Ann. § 12-3-1210.

7.       Defendant Trustees of the University of Tennessee ("Trustees") governs all University of Tennessee campuses, of which the University of Tennessee Knoxville is the "flagship" campus. Among other duties, the Trustees are tasked with managing university funds, establishing policies regarding student conduct, and monitoring nonacademic programs for compliance with state and federal law. Tenn. Code Ann. §§ 49-9-209(d)(1)(F)–(K).

8.       Defendant Randy Boyd is the President of the University of Tennessee. He is being sued in his official capacity as the Chief Executive Officer responsible for the successful conduct of UT and the supervision of each of its campuses.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the First and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. § 1983.

10. Venue in this district is proper pursuant to 28 U.S.C. § 139l(b) and 139l(e) because the acts and injuries alleged occurred in and continue to occur in this judicial district.

## FACTUAL ALLEGATIONS

11. In late April of last year, an Instagram post from UT's Students for Justice in Palestine invited students and community members to a vigil.[1] After the SJP event ended, students were invited to gather at the Torch Bearer to continue being in community.[2] In addition to supporters of the demonstration, there were also passersby that vocally opposed the demonstrations and loudly drowned out the conversations taking place amongst pro-Palestinian demonstrators.[3] One counter-demonstrator opined that "it's our right and our American obligation to come out and show that we are prideful of this place and we want to come out and show them that they can't protest the crazy stuff they're protesting."[4]

12. Eventually, pro-Palestinian demonstrators made their way to the lawn at the UTK School of Law—where students and community members felt that they would be safe because of their pre-existing relationships with current and former law professors—and this is where the People's School for Gaza was established.[5] Many remarked upon the significance of standing

---

[1] @sjp_utk, *Wednesday's Vigil*, INSTAGRAM, Apr. 29, 2024, https://www.instagram.com/sjp_utk/ (last visited May 11, 2025).

[2] Abby Ann Ramsey Editor Editor-in-Chief and Bella Hughes, Managing, *Recapping Wednesday's Protests in Support of Palestine on the University of Tennessee's Campus*, THE DAILY BEACON, May 1 2024, https://www.utdailybeacon.com/campus_news/campus_events/recapping-wednesday-s-protests-in-support-of-palestine-on-the-university-of-tennessee-s-campus/article_51316de6-0812-11ef-b83c-377d7d744666.html (last visited May 12, 2025) (provides a timeline of the first day's events).

[3] https://adelante.box.com/s/7z9vhgu8jmr2bbb9txk9w9kub1n4gtl3

[4] Id.

[5] https://www.instagram.com/p/C6bzilxRxQm/?igsh=MWJqd2Rudjl3ZmJ4aw==

underneath a building with the words "Equal Justice Under Law" etched in stone. (See Hasan, Theo, Zanne) Under the promise of equal justice, the People's School submitted their demands of their university in concert with countless others who were also making unpopular demands of their universities.[6] The announcement to gather at the law school referenced the toll of the genocide on Knoxville's Palestinian community, which at that time, included the deaths of 173 relatives, and it also reminded them that the weapons used were connected to the university's holdings and to the Biden Administration.[7] Before the end of the night, administrators at the University of Tennessee threatened students and community members with felonies and called upon the police to disperse the peaceful demonstrations.[8] Specifically, the administration invoked Tennessee Code Annotated § 39-14-414, the felony camping law in effect after 10 p.m., and conjured a large police presence in riot gear.

13. The second day of the teach-ins at the People's School for Gaza began quietly,[9] despite the previous evening's show of force by the university and the police. But before 10 p.m., nine demonstrators were detained.[10] Unlike the previous day, however, the administration did not threaten to charge them with felonies.

---

[6] @peoplesschoolforgaza, *Our Demands*, Instagram, May 2, 2024, https://www.instagram.com/peoplesschoolforgaza (last visited May 10, 2025); Joyce Orlando, *Why Are Students Protesting? TN, US Campuses See pro-Palestine Sit Ins*, The Tennessean, May 3, 2024, https://www.tennessean.com/story/news/local/2024/05/03/why-are-students-protesting-university-of-tennessee-vanderbilt-demonstrations/73555634007/ (last visited May 11, 2025).

[7] Id.

[8] Caleb Jarreau, Emma Johnston, & Bella Hughes, *Police Arrive to Tennessee College of Law Lawn, Protestors in Support of Palestine Disperse*, THE DAILY BEACON, May 2, 2024, https://www.utdailybeacon.com/campus_news/administration/police-arrive-to-tennessee-college-of-law-lawn-protestors-in-support-of-palestine-disperse/article_fd2a84b8-083d-11ef-842e-b7f77f556d60.html (last visited May 11, 2025).

[9] @peoplesschoolforgaza, *Solidarity Study Session for Gaza Happening Now! At the UT College of Law*, INSTAGRAM, May 2, 2024, https://www.instagram.com/p/C6eIQo9LO_n/ (last visited May 13, 2025).

[10] Alexa Benson, *University of Tennessee Police Detain Nine at Pro-Palestinian Protest in Knoxville*, HOODLINE (May 3, 2024), https://hoodline.com/2024/05/university-of-tennessee-police-detain-nine-at-pro-palestinian-protest-in-knoxville/ (last visited May 11, 2025); Connor Hester & Melanie Vásquez Russell, *9 Protesters Arrested on UT Knoxville Campus*, WKRN NEWS 2 (May 3, 2024), https://www.wkrn.com/news/tennessee-news/9-protesters-arrested-on-ut-knoxville-campus/ (last visited May 11, 2025).

14.     On day three, the law school lawn was barricaded by the police[11] and the administration again threatened to charge demonstrators with felonies under the anti-camping law. In explaining the need for the police presence the evening before, Chancellor Donde Plowman explained that "[w]e are always going to protect people's right to speech. We want every view in the world expressed and want everyone to feel safe expressing their views," but concluded that "[w]hat happened last night I don't see as free speech. It was about use of property. We are going to apply the rules the same for everyone. A group cannot decide to just take over this part of the campus and staying there indefinitely and sleeping there."[12] But the People's School had not been camping, nor were they charged with camping. That evening, the People's School held a Shabbat Ceremony led by members of Knoxville's Jewish Voice for Peace.[13] After the administration threatened to charge demonstrators with felonies if they did not disperse, eleven demonstrators held their ground on the lawn of the College of Law, but the police never came to arrest them.

15.     On the evening of May 10, about thirty demonstrators—the largest group of demonstrators yet willing to defy the 10 p.m. free speech cut-off time—remained on the lawn of the College of Law, but again, the police never came to arrest them.[14]

16.     Over the course of the next couple of days, UT administrators continued to act in concert with the police to intimidate and disperse pro-Palestinian demonstrators.[15] Passersby were

---

[11] @easttnstories, *Police Barricade the Law School Lawn*, INSTAGRAM, May 3, 2024, https://www.instagram.com/reel/C6fQJ7pM0fY/ (last visited May 10, 2025).

[12] Dominic Webster, *Pro-Palestinian Demonstrations Continue on University of Tennessee Campus*, WATE 6 ON YOUR SIDE, May 3, 2024, https://www.wate.com/news/top-stories/pro-palestinian-demonstrations-continue-on-university-of-tennessee-campus/ (last visited May 12, 2025).

[13] @peoplesschoolforgaza, *Jewish Community Members from @jvpknoxville Led Us in a Beautiful Shabbat Ceremony Yesterday Evening* 💛, INSTAGRAM, May 4, 2024, https://www.instagram.com/p/C6jl2EAplyl/ (last visited May 10, 2025).

[14] @mergoatmag, *After Being Threatened with Felony Charges, Students Sit Quietly Waiting for Police*, INSTAGRAM, May 11, 2024, https://www.instagram.com/p/C6z6bvwM14x/ (last visited May 10, 2025).

[15] @easttnstories, *"Aren't You a Little Short for a Stormtrooper?" *Sound on for Enjoyment**, INSTAGRAM, May 5, 2024, https://www.instagram.com/reel/C6l7iEHJCYm/ (last visited May 10, 2025); @palestineactionandliberation, *Press Conference with Arrestees and Students of @peoplesschoolforgaza*, INSTAGRAM, May 6, 2024, https://www.instagram.com/reel/C6pLSFWRzH1/ (last visited May 10, 2025); Allen Bolton, *Letter to the Representatives of an Unaffiliated Group Calling Itself the "People's School for Gaza,"* May 6, 2024.

also allowed to intimidate them[16] and even Orwellian robots with disembodied voices were outsourced to intimidate demonstrators.[17] Despite the unpredictable, but ongoing police presence, the People's School for Gaza continued to gather peacefully to conduct their study sessions.[18]

17.     On May 15, the People's School held a vigil to commemorate Nakba Day. Several who participated in the vigil that evening were arrested.[19] Notably, they were arrested before 10 p.m., which suggests that they were not arrested for violating the felony camping law, but rather, they were ostensibly arrested for violating university rules.[20] Almost one year later, the criminal charges remain pending.[21]

## INJURIES TO PLAINTIFF

18.     Defendants injured Plaintiffs by orchestrating the arrest of pro-Palestinian demonstrators, by subjecting students to disciplinary proceedings, and by indefinitely banning community members, including alumni, from its campus after they engaged in protected conduct.

19.     The injuries to the Plaintiffs are ongoing because those arrested have to contend with a permanent record with potentially devastating consequences, including the threat of detention or deportation. Student participants of the People's School are injured on an ongoing

---

[16] Saul Young, *Pro-Palestinian Demonstrators Gather on University of Tennessee Campus*, KNOXVILLE NEWS SENTINEL, May 13, 2024, https://www.knoxnews.com/picture-gallery/news/local/2024/05/10/pro-palestinian-demonstrators-university-of-tennessee-campus/73638951007/ (last visited May 12, 2025).

[17] @peoplesschoolforgaza, *Robotic Surveillance at the Law School Lawn*, INSTAGRAM, May 8, 2024, https://www.instagram.com/reel/C6th5pgLUUh/ (last visited May 10, 2025).

[18] @peoplesschoolforgaza, *People's School for Gaza Is in Session*, May 10, 2024, https://www.instagram.com/peoplesschoolforgaza (last visited May 10, 2025); *UT Students Continue Protests after Nine Were Arrested on Campus*, WBIR Channel 10, May 6, 2024, https://www.youtube.com/watch?v=ePvP95Arze8 (last visited May 11, 2025).

[19] @peoplesschoolforgaza, *People's School for Gaza Presents: Nakba Day Vigil*, INSTAGRAM, MAY 15, 2024, https://www.instagram.com/p/C6_8Cq8Rhts/ (last visited May 10, 2025); *Pro-Palestinian demonstrators hold vigil, get arrested on University of Tennessee campus*, KNOXVILLE NEWS SENTINEL, May 15, 2024, https://www.knoxnews.com/picture-gallery/news/local/2024/05/15/pro-palestinian-demonstrators-hold-vigil-get-arrested/73708807007/ (last visited May 10, 2025).

[20] Hope McAlee, *Protesters Arrested, Accused of Violating UT Campus Rules*, WATE 6 ON YOUR SIDE, May 16, 2024, https://www.wate.com/news/knox-county-news/protestors-arrested-accused-of-violating-ut-campus-rules/ (last visited May 11, 2025).

[21] See *UT Protesters' Case in Limbo Nearly a Year after Arrests; Knoxville Lawyer Questions Delay*, WBIR Channel 10, Apr. 17, 2025, https://www.youtube.com/watch?v=HKVgZt8graQ (last visited May 13, 2025).

basis because they were subjected to UT's disciplinary proceedings for engaging in protected conduct. Nonstudent community members, including alumni, are continuously injured because they have been forbidden from returning to UT's campus indefinitely.

20.    The arrest of students and nonstudents as a consequence for holding a vigil during Nakba Day makes the injury permanent. The vigil was scheduled on May 15 to commemorate a specific anniversary, known as Nakba Day, and Plaintiff's ability to hold a vigil on that date is a core part of their Plaintiff's speech. The vigil was scheduled to occur on Nakba Day because it is an anniversary that holds emotional significance for Palestinians and observers of human rights across the globe, and its commemoration would receive significant attention from the campus at-large.

## CAUSES OF ACTION

### First Claim for Relief

### First Amendment to the U.S. Constitution - Freedom of Speech, (42 U.S.C. § 1983)

21.    The First Amendment binds the State of Tennessee pursuant to the incorporation doctrine of the Fourteenth Amendment. In all of the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

22.    Pro-Palestinian demonstrations are protected First Amendment expression because they conducted teach ins on the university campus and did not create material disruption, cause substantial disorder, or invade the rights of others at school. The Government's decision to arrest students and community members when they were participating in a vigil on their university campus, charge nonstudents with trespassing and subject current students to disciplinary proceedings—unconstitutionally censors and penalizes Plaintiffs because of their viewpoint that Palestinians have the right to exist and that Nakba Day commemorates the start of Israel's occupation and genocidal campaign in Palestine.

23.    Viewpoint-based discrimination is presumptively unconstitutional in any setting. Its dangers are magnified in the university setting, because it interferes with long-recognized academic freedom principles. *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 828-30 (1995). "Viewpoint discrimination is an egregious form of content discrimination and is presumptively unconstitutional." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (internal

7

quotation omitted). Therefore, in schools, "[t]he prohibition of expression of one particular opinion, at least without evidence that it is necessary to avoid material and substantial interference with schoolwork or discipline, is not constitutionally permissible." *Tinker*, 393 U.S. at 511. Content, viewpoint, and speaker-based discrimination, unless narrowly tailored to a compelling interest, violates the First Amendment, and the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976).

24.     Defendants are engaging in unconstitutional content-based discrimination by orchestrating the arrests of students and community members who were not breaking any laws and expressing their dissent in a public university, as is their right.

25.     The denial of constitutional rights is an irreparable injury per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Moreover, UT's content- and viewpoint-based restrictions preventing them from peacefully assembling and expressing themselves constitutes an unconstitutional restriction of speech because it fails to satisfy strict scrutiny. *Reed v. Town of Gilbert,* 576 U.S. at 163. Because UT's viewpoint, content, and speaker-based restriction does not survive strict scrutiny, i.e., it is not "narrowly tailored to serve compelling state interests" - it is an unconstitutional restriction on speech in a limited public forum. *Id*.

26.     Finally, UT's conduct toward Plaintiffs recklessly and callously disregarded and was indifferent to their rights because authorities acted with the intent to suppress nondisruptive gatherings and teach-ins, as well as a politically significant vigil. Accordingly, punitive damages are appropriate and necessary to punish UT for abridging the Plaintiff's constitutional rights and to deter similar violations that suppress and chill speech under the guise of protecting students.

## PRAYER FOR RELIEF

**WHEREFORE**, in light of the foregoing, Plaintiff respectfully requests that this court:

A.      Issue preliminary and permanent injunctive relief restraining Defendant from prohibiting pro-Palestinian demonstrators from assembling on its campus;

B.      Declare the arrests and student disciplinary hearings unconstitutional under the First Amendment to the United States Constitution;

8

C.      Award Plaintiffs costs of suit and other reasonable expenses under 42 U.S.C.
        § 1998;

D.      Award Plaintiffs damages for the violation of their First Amendment
        rights; and

E.      Grant such additional relief as the interests of justice may require.

## Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

## A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_____                    May 15, 2025
Hasan Husain, Plaintiff                     Date
*Pro se*

_____                    May 15, 2025
Layla Soliz, Plaintiff                      Date
*Pro se*

9