UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

HASAN HUSAIN, et al.;                    )
                                         )
           Plaintiffs,                   )
                                         )
v.                                       )          3:25-CV-218-KAC-JEM
                                         )
TENNESSEE BOARD OF REGENTS, et al.;      )
                                         )
           Defendants.                   )

## ORDER

Defendants Trustees of the University of Tennessee and Randy Boyd, in his official capacity as the President of the University of Tennessee, ("Moving Defendants") filed a "Motion to Dismiss" [Doc. 12]. They ask the Court to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). Because the Complaint fails to state a First Amendment claim against Moving Defendants, the Court grants the Motion and dismisses the claims against Moving Defendants.

I.    **Background**[1]

Plaintiffs Hasan Husain and Layla Soliz are current or former students at the University of Tennessee who live in Knoxville, Tennessee [*See* Doc. 1 at 2]. They are represented by counsel in this action [*See* Doc. 11]. Their claims arise from multi-day "pro-Palestinian demonstrat[ions]" at the University of Tennessee in April and "May 2024" [*See* Doc. 1 at 2-3]. As salient here, "[i]n late April" 2024, "an Instagram post from UT's Students for Justice in Palestine invited students

---

[1] At this stage in the litigation, the Court construes the factual allegations in the Complaint in the light most favorable to Plaintiffs, "accept[s] all well-pled factual allegations as true, and draw[s] all reasonable inferences" in their favor. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

and community members to a vigil" [*Id.* at 3]. After that vigil, "students were invited to gather at the Torch Bearer [a prominent statue on the University of Tennessee, Knoxville campus] to continue being in community" [*Id.*]. Eventually, "demonstrators made their way to the lawn at the UTK School of Law" to "submit[] their demands of their university" [*Id.* at 3-4].

"Before the end of the night, administrators at the University of Tennessee threatened students and community members with felonies and called upon the police to disperse the peaceful demonstrations" [*Id.* at 4]. "Specifically, the [University] administration invoked Tennessee Code Annotated § 39-14-414, the felony camping law in effect after 10 p.m." [*Id.*].

On the "second day" of the protest, "nine demonstrators were detained" "before 10 p.m." [*Id.*]. But "the administration did not threaten to charge them with felonies" [*Id.*]. "On day three, the law school lawn was barricaded by the police and the administration again threatened to charge demonstrators with felonies under the anti-camping law" [*Id.* at 5].

Commenting on the previous night's demonstrations, University of Tennessee, Knoxville "Chancellor Donde Plowman explained that" the University of Tennessee is "'always going to protect people's right to speech'" [*Id.*]. The University "'want[s] every view in the world expressed and want[s] everyone to feel safe expressing their views'" [*Id.*]. Chancellor Plowman explained, however, that "'[w]hat happened last night I [Chancellor Plowman] don't see as free speech. It was about the use of property'" [*Id.*]. She then noted that the University would "'apply the rules the same for everyone'" [*Id.*]. But she stated that "'[a] group cannot decide to just take over this part of campus and stay[] there indefinitely and sleep[] there'" [*Id.*].

The demonstrators "had not been camping" [*Id.*]. And "[a]fter the administration threatened to charge demonstrators with felonies if they did not disburse, eleven demonstrators held their ground on the lawn of the College of Law" but "the police never came to arrest them" [*Id.*]. "On

2

the evening of May 10, about thirty demonstrators . . . remained on the lawn of the College of Law, but again, the police never came to arrest them" [*Id.*]. "Over the course of the next couple of days, UT administrators [purportedly] continued to act in concert with the police to intimidate and disperse pro-Palestinian demonstrators" [*Id.*]. Finally, on "May 15," demonstrators "were arrested before 10 p.m." [*Id.* at 6].

Based on these events, Plaintiffs filed suit. The Complaint asserts Section 1983 content-based and viewpoint discrimination claims under the First Amendment [*See* Doc. 1 at 6]. Moving Defendants filed the instant "Motion to Dismiss" [Doc. 12], arguing, among other things, that the Complaint fails to state a claim because it does not "demonstrate" that Plaintiffs "experienced a deprivation of their constitutional rights" [*See* Doc. 12 at 1]. Plaintiffs opposed [*See* Doc. 14]. Moving Defendants replied [Doc. 15].

## II.    Analysis

To survive a Rule 12(b)(6) motion, "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Stanley v. W. Michigan Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility" if the Complaint pleads "***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 452 (6th Cir. 2024) (citation and quotations omitted) (emphasis added). The Court construes the factual allegations in the Complaint in the light most favorable to Plaintiffs, "accept[s] all well-pled factual allegations as true, and draw[s] all reasonable inferences" in their favor. *See Courtright*, 839 F.3d at 518.

But the Court does "not accept as true legal conclusions or unwarranted factual inferences." *See Willman v. U.S. Att'y Gen.*, 972 F.3d 819, 823 (6th Cir. 2020) (quotations and citation omitted).

And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice" to state a plausible claim. *Id.* "Threadbare recitals of the elements of a cause of action and conclusory statements won't do" either. *See Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 683 (6th Cir. 2024) (cleaned up).

To state a claim under 42 U.S.C. § 1983, Plaintiffs must plausibly allege that a "person" acting "under color of" state law deprived them of a constitutional right. *See* 42 U.S.C. § 1983. The First Amendment prohibits Congress from making a law "abridging the freedom of speech." *See* U.S. Const. Amend. I. "This command applies with equal force against the States through the Fourteenth Amendment." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1050 (6th Cir. 2015) (citation omitted).

But the First Amendment does not require the government to hold its property open "to all types of expressive activities at all times." *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). Like a private owner, the government "has power to preserve the property under its control for the use to which it is lawfully dedicated." *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983) (quoting *Adderley v. State of Fla.*, 385 U.S. 39, 47 (1966)); *see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985) (noting that the Constitution does not require the government to "grant" a private speaker "access" to "every type of Government property" "without regard to the nature of the property or to the disruption that might be caused by the speaker's activities"). As one classic example, the government may impose "reasonable time, place and manner" restrictions on speech. *See Perry Educ. Ass'n*, 460 U.S. at 46.

"To determine the constitutionality of a government restriction on speech on publicly-owned property," the Court considers (1) whether a plaintiff's speech is "protected by the First

4

Amendment," (2) "what type of forum is at issue," and (3) whether the relevant restriction on speech "satisfies the constitutional standard for the forum." *See Miller*, 622 F.3d at 533; *see also Cornelius*, 473 U.S. at 797. The law generally recognizes four (4) types of fora: (1) the "traditional public forum," (2) the "designated public forum," (3) the "limited purpose public forum," and (4) the "nonpublic forum." *See Miller*, 622 F.3d at 534. The type of forum at issue dictates the "standard" used to evaluate the constitutionality of "limitations" on speech. *See Perry Educ. Ass'n*, 460 U.S. at 44.

On one end of the spectrum, a traditional public forum is public property that "tradition" has "long" "devoted to assembly and debate," like streets, parks, or sidewalks. *Id.* at 45; *see also Agema v. City of Allegan*, 826 F.3d 326, 335 (6th Cir. 2016) (Merritt, J. concurring). The government may limit speech in a traditional public forum only "when the exclusion is" both "necessary to serve a compelling state interest" and "narrowly drawn to achieve that interest." *See Cornelius*, 473 U.S. at 800. On the other end of the spectrum, a nonpublic forum, as its name suggests, is public property not traditionally designated as "a forum for public communication." *See Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007) (quoting *Perry Educ. Ass'n*, 460 U.S. at 45). In a nonpublic forum, the government may generally impose content-based restrictions provided that those restrictions are "viewpoint neutral" and "reasonable" considering the forum's "purpose." *See Cornelius*, 473 U.S. at 806; *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transportation*, 978 F.3d 481, 491 (6th Cir. 2020). In between, the government may open a nonpublic forum for certain public use. *See Miller*, 622 F.3d at 534-35. Depending on the nature of the government's action, this may create a designated or limited purpose public forum. *Id.*

Importantly, "[i]n the absence of evidence of an intent on the part of the government to open . . . nontraditional forums for public discourse," the forum retains its status as a nonpublic forum. *See United Food & Com. Workers Loc. 1099 v. City of Sidney*, 364 F.3d 738, 750 (6th Cir. 2004). That is, absent alleged government action or intent to open a nonpublic forum, a nonpublic forum remains a nonpublic forum. *Id.*; *see also Agema*, 826 F.3d at 335 (Merritt, J. concurring).

Here, based on the factual allegations in the Complaint, the "lawn at the UTK School of Law" is a nonpublic forum [*See* Doc. 1]. Initially, the law school lawn is not a traditional public forum. *See Perry Educ. Ass'n*, 460 U.S. at 45. The facts in the Complaint fail to indicate the hallmarks or "long tradition" required under the law to qualify [*See* Doc. 1]. *See Perry Educ. Ass'n*, 460 U.S. at 45. And the law school lawn is not a designated or limited purpose public forum either. The Complaint includes no allegations indicating that the University intended to or did open the law school lawn for expressive activity [*See* Doc. 1]. Without any alleged action or intent by the University to open the law school lawn for discourse, the law school lawn remains a nonpublic forum. *See United Food & Com. Workers Loc. 1099*, 364 F.3d at 750; *see also Agema*, 826 F.3d at 335 (Merritt, J. concurring).

Because the law school lawn was a nonpublic forum at the relevant time, the University was permitted to impose certain speech limitations. *See Cornelius*, 473 U.S. at 806. These limitations may include viewpoint neutral and reasonable content-based limitations and reasonable time, place, or manner restrictions. *See id.*; *Perry Educ. Ass'n*, 460 U.S. at 46; *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (explaining that content-based restrictions "target[] speech based on its communicative content" or "the topic discussed"); *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021) (describing viewpoint

6

discrimination as a "kind of content discrimination" that "permits some private speech" on a particular "subject" and limits "only" "certain points of view").

Against this backdrop, the Complaint fails to identify any unconstitutional limitations on speech at the law school lawn. The Complaint includes no facts identifying a policy or act taken by the University that targeted Plaintiffs' speech based on "topic" or "subject matter," much less based on Plaintiffs' "viewpoints within that subject matter." *See City of Austin,* 596 U.S. at 69-71. The bald assertions that Defendants discriminated based on "viewpoint" and "content" do not save the claims. *See Willman*, 972 F.3d at 823. Under the law, the Complaint must allege ***facts*** that would allow the Court to infer those legal conclusions. *See FedEx Ground Package Sys., Inc.*, 97 F.4th at 452. The Complaint does not. Not only are the facts in the Complaint lacking, the facts alleged point the other direction. The Complaint highlights that the Chancellor of the University stated that the University was "'always going to protect people's right to speech,'" "'want[ed] every view in the world expressed,'" and would "'apply the rules the same for everyone'" [*See* Doc. 1 at 5]. So, the Complaint fails to state a content-based or viewpoint discrimination claim. *See Perry Educ. Ass'n*, 460 U.S. at 46; *Cornelius*, 473 U.S. at 797.

For the first time in their Response, Plaintiffs argue that their Complaint raises a First Amendment retaliation claim [Doc. 14 at 5]. But the Complaint itself does not raise such a claim [*See* Doc. 1]. And Plaintiffs "cannot 'amend their complaint in an opposition brief;'" so any retaliation claim fails on that basis alone. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). But even if the Complaint did raise a First Amendment retaliation claim, the claim would fail on the merits. To state a retaliation claim, the Complaint must allege facts showing that Plaintiffs "engaged in constitutionally protected speech." *See DeVooght v. City of*

*Warren, Michigan*, 157 F.4th 893, 898 (6th Cir. 2002).  Because the Complaint fails to allege facts showing that Plaintiffs' speech on the law school lawn was constitutionally protected, any First Amendment retaliation claim necessarily fails on the merits too.

**III.    Conclusion**

For the above reasons, the Court **GRANTS** the "Motion to Dismiss" [Doc. 12] filed by Defendants Trustees of the University of Tennessee and Randy Boyd, in his official capacity as the President of the University of Tennessee.  And the Court **DISMISSES** the claims against them.

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge

8